ARTHUR M. BURNHAM *vs*. GEORGE W. HESELTON.

Kennebec.   Opinion August 6, 1892.

*Client and Attorney.   Champerty.   R. S., c. 112, § 12.*

An agreement, to be champertous, must stipulate for the prosecution or defense of a suit.   Litigation is an essential element of champerty.

Where the defendant, an attorney, agreed in writing "to endeavor to collect a note." belonging to the plaintiff, who was to have seventy-five dollars, if that amount should be collected, and the defendant to have all over that sum, and to pay all expenses incurred in the collection; but no mention was made of a suit as one of the means to be employed in the collection, and no suit was in fact employed.   *It was held*: after the note had been collected that the plaintiff can not maintain a suit for recovery upon the ground that the agreement was champertous.

Such an agreement between an attorney and his client is *prima facie* fraudulent; and the burden is upon the attorney to satisfy the jury, by a fair preponderance of evidence, that he acted with all due fidelity towards his client.

See *Burnham* v. *Heselton*, 82 Maine, 495.

ON MOTION AND EXCEPTIONS.

This was an action of assumpsit tried a second time to a jury in the Superior Court, for Kennebec county, and in which the jury returned a verdict for the defendant.   The plaintiff moved for a new trial and also took exceptions.

The facts will be found in the former report of the case in 82 Maine, 495.

(Exceptions).   The plaintiff requested the presiding justice to instruct the jury in regard to the validity of the agreement between the parties, as follows :

"1. That an agreement by an attorney to institute or maintain legal proceedings at his own expense for the collection of a debt due another in consideration of a share in the fruit thereof, is in law invalid."

"2. If the note mentioned in this agreement was exhibited in an answer to a bill in equity pending in the Supreme Judicial Court, praying for a dissolution of the corporation, and it is alleged in the bill that there are no corporate debts, and in the answer that the note is a debt of the corporation, and the appointment of a receiver of the assets of the corporation is prayed for, the validity of such note is judicially put in issue in the pending suit," and "In the light of the admitted facts in this

case the agreement of May twenty-sixth, may be fairly inter-
pretated to contemplate the institution or maintenance of legal
proceedings by the defendant at his own expense for the col-
lection of the note mentioned, in consideration of a share of
the proceeds. Such an agreement, whether verbal or written,
is illegal."

Upon these points the presiding justice instructed the jury :

"I may say that it is contended on the part of the plaintiff,
regardless of the question of good faith on the part of the defend-
ant as an attorney, that the very contract itself upon its face is.
in violation of the established principles of law of this State and.
would not be binding in any event. This principle has not
been invoked by counsel for the plaintiff until the close of the·
trial, and I presume it was not expected that I should give you.
that rule, because you will perceive that if I should your function
would be at end and there would be nothing for you do. I deem
it of great importance that the issue of fact raised here by the·
evidence, the question of good faith, should be settled by you..
And I say to you for the purposes of this trial,— and you will
be governed by the law I give you of course, as in all other
cases,—that this contract introduced before you in reference to
the collection of this note, or for sale of the note, whether con-
strued with reference to the terms appearing upon its face, or
interpreted in the light of uncontroverted facts before you, is
not necessarily in violation of any law of the State of Maine,
and that if, upon the principles I shall more particularly state,
you find there has been no want of good faith or good fidelity
on the part of the defendant, no want of faithful discharge of
duty on his part towards his client, the plaintiff can not recover
in this action. If there is any error in this, the plaintiff will
have his rights hereafter. You will not be responsible for that."

The plaintiff's counsel also requested the presiding justice to
charge the jury as follows :

"It being admitted in this case that the plaintiff and defend-
ant were attorney and client ; that the note in evidence was left
by the plaintiff for the defendant to collect in March, 1888, and
that the amount due on said note was afterwards collected by

the defendant and one hundred eighty-seven dollars and sixty-seven cents retained by him under the agreement of May twenty-sixth, 1888.

"1. I instruct you that the presumption of law is against the validity of such an agreement and unfairness will be inferred and presumed and this presumption must be overcome by clear and cogent proof on the part of the defendant.

"2. That independent of that instrument, concerning the bargain made by the defendant with the plaintiff under which he retained the greater portion of the proceeds of the note, the burden of proof is upon the defendant to establish by a preponderance of evidence (1,) the most perfect and good faith on his part, (2,) the absence of any undue influence exercised upon the plaintiff by himself or any person in collusion with him, (3,) that the consideration was fair and adequate, (4,) that the plaintiff had full knowledge of the true situation and of the parties with whom he was dealing, and (5,) that with such knowledge he made the bargain, (6,) that the plaintiff had entire freedom of action, (7,) that he gave his client full information and disinterested advice, and it must be as full as the defendant could with diligence have obtained, (8) he must show that he was as diligent to do the best he could for his client as much as if he had been making the bargain for his client with a stranger."

But the presiding justice instructed the jury as follows :

"I deem it of great importance that the issue of fact raised here by the evidence, the question of good faith, should be settled by you. What are the duties and responsibilities imposed by the law upon a member of the legal profession who establishes himself in the community as competent to transact legal business and advise business men? Because, of course, there must be recognized principles of law with reference to such familiar subjects, with reference to members of the legal profession, as much so as with reference to members of the medical profession. When a person holds himself out to the public as competent to transact legal business, as an attorney and counsellor at law, he impliedly says to the public whom he invites to employ him :

I guarantee to you, if you employ me, that I possess a reasonable and ordinary degree of knowledge and skill with reference to the duties of my profession; not the highest degree known to the most eminent members of the profession, but reasonable and ordinary degree of knowledge and skill; that I will discharge my duties with reasonable and ordinary degree of diligence, prudence and care. I will apply this knowledge and skill with reasonable and ordinary diligence, care and skill. Not the very highest degree which might possibly be exercised, but a reasonable and ordinary degree of knowledge, care, skill and diligence. I further guarantee that I will give you the benefit of my best judgment. I will give you honest advice. I will act with all due fidelity towards you. And the law does require that he shall act with all due fidelity towards his client under all circumstances, and apply this knowledge and skill with a reasonable and ordinary degree of diligence, prudence and care, and at all times to exercise his best judgment. I say it may not always be sound judgment, but he is to give his client the benefit of the best judgment he has. Now these are the general principles applicable to the duties of an attorney and counsellor at law under all circumstances.

" But what are the further duties and responsibilities of the attorney as between him and the client? What are the rights of the client as between him and his attorney? You have not inferred, I trust, from arguments of counsel upon one side and the other that a member of the legal profession is prohibited from the fact of his employment from doing business even with his client. There is no such law. He is not prohibited from doing business with his client; he is not prohibited even from purchasing the subject matter of his employment, or of litigation, when employed by a client. But the law is watchful of the rights of a client as between him and his attorney, and it does say to an attorney that when you have been employed by a client, after the relation of client and attorney has been established, if you see fit, if you are requested even by the client, if he specially solicits and desires you, to purchase the subject matter of the employment, or litigation even, if that has been commenced,

you shall take no advantage of your confidential relations with
your client. You shall still in a sense regard him as your
client. Indeed, I may say that he shall regard him as his client
in every sense, giving him the same advice that he would if the
client were going to deal with a third party, a stranger. He
shall impart to him, in other words, all the information he has
which is material to the subject matter, give him all the knowl-
edge he has that the client may understand the situation pre-
cisely as he does, acting, in a word, as I have already said, with
all due fidelity towards his client. This is what the law requires
of him, and whenever the good faith of such a transaction is
brought in question, the burden is upon the attorney to show by
a preponderance of evidence that he has done all these things,
acted with all due fidelity in all the respects which I have
named, and given all the information to the client, and treated
him as his client. Because if he collects money after the
relation of attorney and client has been established, the law
presumes that he has collected it for his client, and the burden
is upon him to show that he has been relieved by some valid
and binding contract from paying it over to his client. I say
the plaintiff claims to recover of this defendant the full amount
collected by him, because the contract set up by the defendant,
even if valid in any event under the laws of this State, was
procured under circumstances and attended with such a history
as ought to satisfy you that he did not act with good faith, did
not do his duty as an attorney, as I have described to you;
that he has been guilty of a fraud in other words, upon the
the plaintiff, for if the plaintiff's contention is correct it must
come to that.

    "Now what is fraud? It is a word of Latin origin, and upon
its face indicates an intention to deceive. Fraud may be defined,
therefore, as deception deliberately practised by one party for
the purpose of obtaining an advantage over another to which he
is not entitled. Deception deliberately practised. And when
a person is accused of fraudulent representations for the purpose
of obtaining an advantage in the purchase of any article of per-
sonal property, it must appear that he has made representations

as a matter of fact as of his own knowledge in relation to some material matter for the purpose of inducing the other party to make that trade, to enter into that contract, and must appear that it has been effectual; that the other party has been induced thereby to enter into the contract; that that representation was false and known by the party making it to be false, then it is a fraudulent representation. I am now speaking of the rule generally between parties, without regard to the relation of attorney and client. So where a party has in his possession material facts which, if communicated to the other side, would lead the mind to a different conclusion, and he intentionally withholds those facts, conceals them from the other side when it is his duty to communicate them, that is known as fraudulent concealment, and is a fraud, precisely the same as an affirmative representation, in law. You will perseive that I have said the intentional concealment of material facts. And they are material wherever, if communicated, they would change the result or would be calculated to change the result. And I have already told you that the duty resting upon an attorney is always to communicate to the client, when he is dealing with him, all that he knows of the subject matter. But nevertheless, it is a fraud precisely the same for the attorney to do this as for any person who is not a member of the legal profession to do it. So I say that, if the plaintiff's contention is correct, it is not seriously in controversy here that the defendant must be adjudged guilty of a fraud, and that is the issue which I propose to submit to you.

"I have called your attention to the great issues of fact between these parties, I have said that the burden of proof is only upon the plaintiff to show you that this defendant received the money. He admits that he received it. Then the burden of proof is upon the defendant to show you that he has acted with all due fidelity towards this plaintiff under the full instructions and explanations I have given you of the duty of an attorney and counselor at law towards his client. The burden is upon him in that respect.

"Of course, it is to be decided upon the principle of preponderance of evidence. If the defendant has given you a preponderance of the evidence in the case in favor of his contention,

he is entitled to a verdict at your hands, and it is for ,you to say,— and there is no power outside of you that can tell you anything differently,— it is for you to say what is a preponderance of evidence."

To these rulings and instructions, and refusals to instruct, the plaintiff took exceptions.

*W. F. Lunt*, for plaintiff.

The defendant, soon after receiving the note, took proper legal steps to collect it. It was his duty to sue out all proper process for that purpose. *Dearborn* v. *Dearborn*, 15 Mass. 318 ; *Cox* v. *Sullivan*, 7 Ga. 44. The plaintiff says that the agreement under which the defendant withheld the money collected by him is champertous at common law. In the light of all the circumstances of this case and by the very terms of the agreement, it was a champertous contract. In champerty the compensation to be given for the assistance rendered is a part of the thing in suit, or some profit growing out of it. *Hovey* v. *Hobson*, 51 Maine, 63 ; 2 Bish. Crim. L. § 131, and note. The offense may be committed, though there has been no suit actually commenced. 2 Bish. Crim. L. 131.

A common instance of champerty is where an attorney at law agrees with a client to make collections, receiving for his compensation a part or percentage of the money. Such an agreement is void. *Ibid.* § 132, and notes. The parties to the agreement being attorney and client, the fair inference from the agreement is, that legal proceedings should be begun or maintained. The case of *Ackert* v. *Barker*, 131 Mass. 436, appears to be a case precisely like this. See also *Belding* v. *Smith*, 138 Mass. 530. The common law, in regard to champerty, is in force in this State, *Hovey* v. *Hobson*, 51 Maine, 65, 66, and § 12, c. 122, R. S., does not restrict or change it. *Wing* v. *Hussey*, 71 Maine, 185.

*Heath and Tuell*, for defendant.

Plaintiff has no reason to complain, because his first request was not good as a whole. *Larrabee* v. *Sewall*, 66 Maine, 376.

The court properly instructed the jury that the presumption of law was against the validity of the agreement and that the

burden of proof was on the defendant to show its fairness, and
this was all the plaintiff was entitled to. He could not ask the
court to use the language of his request, that "the presumption
must be overcome by clear and cogent proof." The instruction
that it must be overcome by proof on the part of the defendant
was sufficient. To hold the defendant to clear and cogent proof
would be to mislead the jury and cause them to believe that a
higher degree of proof was required than is usual in civil cases.

The second request has eight subdivisions. To sustain the
exceptions, the court must find that the plaintiff was entitled to
his entire request with each and all of its eight subdivisions;
some were material, some not; some were given, some withheld.
We contend that the plaintiff was certainly not entitled to all of
his request. The court did instruct the jury that the burden of
proof was upon the defendant to show good faith on his part,
but the request demands that the instruction should be "the
most perfect and good faith." The simple rule, given by the
court, of good faith and due fidelity included this subdivision.

The second subdivision has no bearing upon the facts of the
case. There was no claim in argument, and no evidence to
support it, that any undue influence was exerted upon the plaint-
iff by any person. Undue influence, as well defined, must mean
coercion and the argument upon the motion most clearly demon-
strates that no such claim was set up in the trial of the case.

The third subdivision was substantially given; so, too, of the
fourth, fifth and sixth, and, substantially, the seventh and the
eighth.

Agreement: If unlawful, it can only be so held under the
the R. S., c. 122, § 12. This agreement was simply "to endeavor
to collect." The statute prohibits an agreement to bring any
action upon shares. It is a familiar rule of construction that
contracts are to receive the construction that will uphold their
validity, if possible. There is no rule of law that would author-
ize or require an agreement "to endeavor to collect" to be con-
strued as an agreement to bring suit. The words used are not
to be extended beyond their plain meaning. To agree to collect
would not, of itself, be an agreement to bring suit. Collections

are made in various ways, through the banks, through express companies, by dunning letters, by personal interviews. The qualifying word, " endeavor," limits materially the defendant's undertaking. That the parties did not intend that defendant should bind himself to bring an action is further evidenced by the fact that any suit so brought would be prosecuted in Massachusetts. The defendant, again, could not bring and prosecute an action in the courts of Massachusetts. The next clause is equally significant, "to pay all expenses incurred in collection." The defendant did not agree to pay any costs of suit. Expenses incurred in collection, by no means, necessarily mean costs of suit. An agreement between attorney and client, where the relation was to continue would have used the phrase, "costs of suit," and the phrase used is in harmony with the limited undertaking of the defendant to endeavor to collect.

The contract has been executed, and a full settlement made. The verdict finds that the defendant treated Burnham with all good fidelity and that Burnham, with a full knowledge of all the facts, acknowledged in writing that he had received full "payment for the note," the contract being executed. Whether a sale or collection contract, it is now too late to invoke the statute, even if it applied. *Miller* v. *Larson*, 19 Wis. 466. If a sale, it is not within the statute, *Thompson* v. *Ide*, 6 R. I. p. 218.

Counsel also cited : *Taylor* v. *Gilman*, 58 N. H. 418; *Fowler* v. *Callan*, 102 N. Y. 395 ; *Manning* v. *Sprague*, 148 Mass. 18.

Without rescission, assumpsit cannot be maintained. The action should be deceit.

WALTON, J. This is an action against an attorney at law to recover money collected by him on a promissory note. After the money was collected, and before this suit was commenced, the plaintiff settled with the defendant, accepted part of the money collected and gave a receipt in full. But the plaintiff says that this settlement was made in pursuance of an agreement between him and the defendant which was champertous ; and that the agreement was procured by the fraudulent suppression

by the defendant of material facts known to him and not known to the plaintiff. The presiding justice refused to instruct the jury that the agreement (which was in writing) was champertous; but instructed them that such an agreement between an attorney and his client was *prima facie* fraudulent; and that the burden was upon the defendant to satisfy them by a fair preponderance of evidence that he acted "with all due fidelity towards the plaintiff." With the burden of proof thus resting heavily upon him, the defendant met the plaintiff face to face, and each told his story to the jury; and the jury returned a verdict for the defendant. A careful examination of the evidence fails to satisfy us that it is the duty of the court to set this verdict aside. The evidence was conflicting, and we think the case came fairly within the province of the jury to decide.

Nor do we think the presiding justice erred in refusing to instruct the jury that the agreement was champertous. An agreement, to be champertous, must stipulate for the prosecution or defense of a suit. An agreement, which does not provide for the prosecution or defense of a suit, may be fraudulent; or, for some other reason, it may be illegal; but, champertous it can not be. No definition has been found in any dictionary, or in any text book, or in any judicial opinion, which does not make litigation an essential element of champerty. Our statute (R. S., c. 122, § 12), which makes the procurement of "any account, note, or other demand, for the profit arising from its collection by a suit at law or in equity; or brings, prosecutes, or defends, or agrees to bring, prosecute, or defend, any suit at law or in equity, upon shares," a penal offense, is based on the same essential element. It is, therefore, immaterial whether we look to the common law or our statute for a definition of champerty, for both make a stipulation for the prosecution of a suit, either at law or in equity, an essential element of the offense. An agreement to collect a demand, or to endeavor to collect one, or to enforce a claim, no mention being made of a suit at law or in equity as one of the means to be employed, is not champertous. Such a contract may be fully performed without the commencement or prosecution of a suit, either at law or in equity. *Scott* v. *Har-*

*mon*, 109 Mass. 237. In the case cited, the agreement was to give the attorney the first fifty dollars that should be collected by him in the enforcement of a mechanic's lien for labor on a house, and the court held that inasmuch as the agreement disclosed no undertaking to carry on a suit, it was not champertous. Champerty, said the court, is defined to be, "the unlawful maintenance of a suit in consideration of some bargain to have part of the thing in dispute, or some profit out of it," "whereupon the champertor is to carry on the party's suit at his own expense." And the court cites Hawkins and Blackstone as authorities for this definition. Webster's Dictionary defines champerty as "An agreement by a stranger, having otherwise no interest, with the plaintiff or defendant in a suit, to supply money, services, information, or evidence, by which to aid in maintaining and carrying on a suit in consideration that he shall receive a part of the matter in suit, as commission or otherwise, if the party with whom the agreement is made prevails; the purchasing a suit, or right of suing; maintenance, with the addition of an agreement to divide the thing in suit."

In the present case, the agreement of the defendant was "to endeavor to collect a note," the plaintiff to have seventy-five dollars, if that amount should be collected, and the defendant to have all over that sum, and pay all expenses incurred in the collection; but no mention was made of a suit as one of the means to be employed in the collection; and no suit was in fact employed. The money due upon the note was collected without suit, the plaintiff accepted the seventy-five dollars, which by the terms of the agreement, he was to have, permitted the defendant to retain the balance and gave a receipt in full. What was before an executory agreement then became an executed agreement. If the defendant was guilty of fraud, of course the plaintiff is entitled to redress. But, clearly, he can not maintain his suit upon the ground that the agreement was champertous.

The charge of the presiding justice was full and clear, and, in our opinion, free from error. And the jury having found,

upon competent evidence, that there was no fraud, we think the entry must be,

*Motion and exceptions overruled.*

PETERS, C. J., VIRGIN, FOSTER and WHITEHOUSE, JJ , concurred.

HASKELL, J., did not concur.